FILED

03 MAY -1 AM 10:39

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

MAY -1 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| DANA J. HAYNIE ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 03-PT-0049-M |
| ) | |
| TYSON FOODS, INC., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM OPINION

This cause comes on to be heard upon defendant Tyson Foods, Inc.'s ("Tyson") Motion to Dismiss, filed on March 19, 2003.

### FACTS AND PROCEDURAL HISTORY[1]

Plaintiff Dana Haynie ("Haynie") was hired by Tyson on July 12, 1993 as a line production worker. In October of 1998, she was promoted by Tyson to the position of salaried supervisor, and, in July of 2001, Haynie was assigned as the acting shift supervisor over deboning. During September of 2001 and continuing into October of 2001, Haynie reported to Tyson a number of unlawful employment practices pertaining to Hispanic employees. Specifically, Haynie reported that the management employees at the Albertville plant were hiring illegal immigrants, which included the creation and acquisition of false credentials for various illegal Hispanic employees. Moreover, these management employees instructed various Hispanic employees to state that they had seven dependents, so that no federal tax would have to be withheld from their pay. Finally, Haynie reported that Hispanic employees were not allowed

---

[1] The "facts" are as alleged by Haynie.

to bid on certain jobs, thus keeping them from moving up in the company and earning higher wages.

Haynie notes that on October 25, 2001, she received a positive employee evaluation. On October 26, 2001, she met with Jerry Tilton ("Tilton"), a Tyson executive from the corporate headquarters. After Tilton reviewed some of the false documentation, some of the Hispanic employees were terminated. Tilton stated to Haynie that "at this rate, we will not have enough employees to run the plant." Haynie contends, upon information and belief, that no Tyson employees involved in the unlawful employment practices were terminated.

Almost immediately after Haynie's concerns were addressed by Tyson, management employees at the Albertville plant began subjecting her to harassment and intimidation. This treatment continued until Haynie was ultimately discharged. Haynie contends that this harassment altered the terms and conditions of her employment to such a degree that she filed an internal harassment complaint with Tyson and her supervisor on or around February 4, 2002. Also, due to the stress and anxiety caused by the harassment and intimidation, Haynie went on medical leave on or around February 4, 2002. She remained off work until February 26, 2002. No corrective action was ever taken by Tyson. To the contrary, on February 28, 2002, Haynie was demoted from her salaried supervisor position, which reduced her pay, benefits, and other terms and conditions of employment. Haynie contends that her situation did not improve, and that as a result, she was constructively discharged on August 13, 2002.

Haynie filed this lawsuit on January 8, 2003. She alleges gender discrimination in violation of Title VII and 42 U.S.C. § 1981 (Count I), retaliation in violation of Title VII and 42 U.S.C. § 1981 (Count II), and retaliation in violation of the Fair Labor Standards Act (Count III).

Haynie seeks, among other things, a declaratory judgment, injunctive relief, damages, and attorney's fees. Tyson now seeks to dismiss some of Haynie's charges against it.

## LEGAL STANDARD

Rule 12(b)(6) tests the legal sufficiency of a complaint. When considering a Rule 12(b)(6) motion, the court assumes that all factual allegations pled in the complaint are true. *United States v. Gaubert*, 499 U.S. 315, 327, 111 S. Ct. 1267, 113 L. Ed. 2d 335 (1991). All factual allegations are to be construed in the light most favorable to the plaintiff. *Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S. Ct. 1378, 103 L. Ed. 2d 628 (1989). Dismissal under Rule 12(b)(6) is appropriate "'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations' of the complaint." *Rendon v. Valleycrest Prods., Ltd.*, 294 F.3d 1279, 1282 (11th Cir. 2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

## ARGUMENTS

Tyson's motion only addresses Count I and Count II of the complaint. With respect to Count I, Tyson argues that 42 U.S.C. § 1981, while prohibiting discrimination on account of race, does not prohibit discrimination on account of gender. In her response, Haynie concedes this point, and agrees that Count I should be dismissed to the extent that it is predicated on a violation of 42 U.S.C. § 1981. There is a dispute between the parties with respect to Count II.

## I. Defendant's Position

With respect to Count II, Tyson also argues that 42 U.S.C. § 1981 does not prohibit retaliation on account of gender; rather, it only prohibits retaliation on account of race. *See Webster v. Fulton County*, 283 F.3d 1254, 1256 (11th Cir. 2002)("Section 1981 protects people,

3

and some entities, from racial discrimination during the making of contracts.")(footnote omitted).

## II. Plaintiff's Response

According to Haynie, it is undisputed that an employee's claim that she was subject to retaliation because she complained of race discrimination is cognizable under 42 U.S.C. § 1981. *See Andrews v. Lakeshore Rehab. Hosp.*, 140 F.3d 1405, 1411-13 (11th Cir. 1998); *Foley v. Univ. of Houston Sys.*, ___ F.3d ___, 2003 WL 751183 at *3-4 (5th Cir. Mar. 6, 2003). Haynie also asserts that a retaliation claim can be maintained by a white employee who is retaliated against for reporting racially discriminatory employment practices aimed at minority employees. *See Andrews*, 140 F.3d at 1411-14; *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1002, 1007-08 (11th Cir. 1997). Haynie argues that this type of retaliation is exactly the type that she has alleged in her complaint.

## III. Defendant's Reply

Tyson counters that *Andrews* does not stand for the proposition that a white employee can maintain a retaliation claim under 42 U.S.C. § 1981 for reporting racially discriminatory employment practices. In fact, Tyson notes, the plaintiff in *Andrews* was a minority and specifically alleged that she suffered retaliation for filing her EEOC charge. 140 F.3d at 1412. Tyson also notes that 42 U.S.C. § 1981 does not contain an "opposition" clause similar to the one found in Title VII. *See Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 961 (11th Cir. 1997)("Both the facts and legal framework of Little's action are grounded solely in the opposition clause of Title VII and are unrelated to the concerns explicitly set forth in the language of § 1981."). Tyson also points to language in *Andrews*, in which the court stated that

4

"as to retaliation after the 1991 Act, not all retaliation claims [under § 1981] are necessarily cognizable." 140 F.3d at 1412. Tyson notes that nowhere in the complaint does Haynie allege that she was retaliated against because of *her* race. This "opposition" retaliation claim, Tyson contends, while permissible under Title VII, is impermissible under 42 U.S.C. § 1981.

## CONCLUSIONS OF THE COURT

It appears to this court that the language in *Little v. United Technologies*, 103 F.3d 956, 960-61 (11th Cir. 1997) is decisive of the remaining issue. That language however, may be dicta. On the other hand, except for the possible issue of the type damages which may be recoverable, the court can see no difference between a possible claim under Title VII and § 1981. The court will reserve judgment on the § 1981 retaliation claim. At trial the possible distinctions between Title VII and § 1981 can be taken care of by special verdicts. There is no need to risk two trials.

The court notes that the following language in *Jackson v. Birmingham Bd. of Ed.*, 309 F.3d 1333 (11th Cir. 2002) also has a bearing on whether the plaintiff has a § 1981 retaliation claim in this case. In *Jackson*, the court discussed whether Title IX has an implied retaliation claim in it at all. The court stated that:

> We begin with the text of § 901. *See supra* at 1340. Section 901 aims to prevent and redress gender discrimination and does so by requiring that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a); *see also Cannon*, 441 U.S. at 704, 99 S. Ct. at 1961. Nothing in the text indicates any congressional concern with retaliation that might be visited on those who complain of Title IX violations. Indeed, the statute makes no mention of retaliation at all. [FN12] Our task, as *Sandoval* makes clear, is to interpret what Congress actually said, not to guess from congressional silence what it might have meant. The absence of any mention of retaliation in Title IX therefore weighs powerfully against a finding that Congress intended Title IX to reach

5

> retaliatory conduct. *See Litman v. George Mason Univ.*, 156 F. Supp. 2d 579, 584-85 (E.D.Va. 2001) ("Congress was aware that it could create a right of action for retaliatory treatment, and it did so in Title VII; it did not do so in Title IX.").

309 F.3d at 1344-45.

In footnote 12, the court stated that

> By contrast, when Congress wished to prohibit retaliation against individuals who complain about employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 78 Stat. 253, as amended, 42 U.S.C. § 2000e *et seq.*, it did so explicitly as part of the statute itself. *See* 42 U.S.C. § 2000e-3(a). The anti-retaliation section of Title VII provides in pertinent part that it shall be an unlawful employment practice for any employer to retaliate against an employee or an applicant for employment "because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). We recognize that Title VII is of limited usefulness in interpreting Title IX, both because Title VII was enacted pursuant to Congress's Commerce power, while both Title VI and IX were enacted pursuant to Congress's Spending Clause power, and because the text and structure of Title VII are markedly different than that of Title IX. *See Gebser*, 524 U.S. at 286, 118 S. Ct. 1989, 141 L. Ed. 2d 277.
>
> Nonetheless, the fact that Congress felt required to prohibit retaliation expressly under Title VII may indicate that Congress did not intend the concept of "discrimination" in Title IX to be read sufficiently broadly to cover retaliation.

After concluding that Title IX did not contain an implied right of action for retaliation, the court went on to state that "even if Title IX did aim to prevent and remedy retaliation for complaining about gender discrimination, Jackson is plainly is not within the class meant to be protected by Title IX." 309 F.3d at 1346. The court stated that

> As *Cannon* held, § 901 identifies victims of gender discrimination as the class it aims to benefit, and so implies a private right of action in their favor. Nowhere in the text, however, is any mention made of individuals other than victims of gender discrimination. Gender discrimination affects not only its direct victims, but also those who care for, instruct, or are affiliated with them--parents, teachers, coaches, friends, significant others, and coworkers. Congress could easily have provided some protection or form of relief to these other interested individuals had it chosen to do so--especially for a harm as plainly predictable as the

> retaliation here at issue [FN14]--but it did not do so expressly. Nor does any language in § 902 evince an intent to protect anyone other than direct victims of gender discrimination. Indeed, as with § 602 of Title VI, the focus of § 902 is "twice removed" from victims of gender discrimination, *Sandoval*, 532 U.S. at 289, 121 S. Ct. at 1521, and, consequently, thrice-removed from individuals like Jackson who are not themselves the victims of gender discrimination. Here, there is quite simply no indication of any kind that Congress meant to extend Title IX's coverage to individuals other than direct victims of gender discrimination. We are not free to extend the scope of Title's IX [sic] protection beyond the boundaries Congress meant to establish, and we thus may not read Title IX so broadly as to cover anyone other than direct victims of gender discrimination.
>
> We thus hold that Title IX does not imply a private right of action in favor of individuals who, although not themselves the victims of gender discrimination, suffer retaliation because they have complained about gender discrimination suffered by others. Statutory intent remains the touchstone of our analysis. Without it--and the mandate of *Sandoval* is crystal clear on this point--we simply cannot imply a private right of action, no matter how desirable the result may be. And our review of both the text and structure of Title IX yields no congressional intent to create a cause of action for retaliation, particularly for a plaintiff who is not a direct victim of gender discrimination. Congress is, of course, free to create a private right of action for retaliation under Title IX and may extend its protection beyond direct victims of gender discrimination. Until it does so, however, *Sandoval* plainly precludes a federal court from implying such a right or expanding the class benefitted by Title IX. The district court was therefore correct to dismiss Jackson's complaint.

309 F.3d at 1346-48 (some footnotes omitted). In footnote 14, the court again contrasted Title

IX with another statute:

> In an analogous statutory context, claims for retaliation are often raised by individuals who are not themselves disabled but are affiliated with disabled individuals under § 504 of the Rehabilitation Act, 29 U.S.C. § 794. *See, e.g., Weber v. Cranston Sch. Comm.*, 212 F.3d 41, 43-44 (1st Cir. 2000) (parent); *Hoyt v. St. Mary's Rehab. Ctr.*, 711 F.2d 864, 865 (8th Cir. 1983) (friend); *Lillbask v. Sergi*, 193 F. Supp. 2d 503, 515 (D. Conn.2002) (guardian); *Whitehead v. Sch. Bd. for Hillsborough County*, 918 F. Supp. 1515, 1522 (M.D. Fla.1996) (parents); *Ross v. Allen*, 515 F. Supp. 972, 976 (S.D.N.Y.1981) (school psychologist). Courts have generally found that a private right exists to redress this type of retaliation, but this is in large part because the statutory text of the Rehabilitation Act explicitly extends its remedies to "*any person* aggrieved by an act or failure to act by any recipient of Federal assistance ... under section 794 of this title." 29 U.S.C. § 794a(a)(2) (emphasis added).

In view of the fact that this is a "developing" area and the further fact that the substantive elements of a Title VII claim and a § 1981 claim are indistinguishable when appropriate, it makes sense to reserve ruling until trial. However, unless the Eleventh Circuit or Supreme Court decides a controlling case clearly to the contrary before trial, this court will not consider the § 1981 retaliation claim.

This ___15___ day of May, 2003.

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE